Kurtis L. BRADHAM, Appellee,

v.

STATE of Iowa, Appellant.

No. 90–714.

Court of Appeals of Iowa.

July 26, 1991.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and R. Andrew Humphrey, Asst. Atty. Gen., for appellant.

Philip B. Mears of Mears, Zimmerman & Mears, Iowa City, for appellee.

Heard by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

OXBERGER, Chief Judge.

Reformatory inmate Kurtis Bradham had an encounter with reformatory Warden, John Thalacker, concerning a pack of cigarettes. Bradham later told another inmate, LuGrain, the Warden put his hands into Bradham's pocket and removed the pack of cigarettes. LuGrain allegedly responded "If the Warden put his hand in my pocket I'd break it." A guard overheard LuGrain's comment, and LuGrain was subsequently disciplined for making a threat.

During the course of the disciplinary action against LuGrain, Warden Thalacker reviewed Bradham's alleged comment that Thalacker had put his hand into Bradham's pocket to remove the pack of cigarettes. Thalacker deemed Bradham's comment to be false and filed a disciplinary report against Bradham for making a false statement. After a hearing, a disciplinary committee found Bradham had made a false statement. The punishment imposed on Bradham included solitary confinement and loss of four days of good conduct time.

Bradham challenged the disciplinary action by appealing to the warden and later to the department of corrections. The disciplinary action was upheld by both reviewing authorities.

Bradham later sought postconviction relief to challenge the disciplinary action. After a hearing, the district court granted Bradham postconviction relief, vacated the disciplinary action, and directed a new disciplinary hearing.

The State has appealed the trial court order granting Bradham postconviction relief.

The State first contends Bradham did not adequately preserve error on most of his issues. The State acknowledges Bradham made the two required administrative appeals. However, the State argues Bradham failed to raise several of his issues in one or both of these appeals. The State argues the district court erred by concluding Bradham had good cause, including his pro se status and his lack of legal sophistication, for failing to raise some of the issues during the administrative hearing.

The State also contends the trial court erred by holding the disciplinary committee was not impartial because two of its three members were prison employees under the direct or indirect supervision of the warden, who had filed the disciplinary report and whose credibility was in issue.

Additionally, the State contends the trial court erred by holding Bradham was denied due process when Warden Thalacker had an ex parte communication with one of the disciplinary committee members concerning the facts giving rise to the disciplinary report.

Finally, the State contends the district court erred by holding Bradham was entitled to present an evidentiary statement from a certain witness, Dale Viers. The State argues the decision whether to call Viers should have been left to the discretion of the administrative law judge.

■ SCOPE OF REVIEW. Ordinarily, our review of postconviction relief proceedings is for errors of law. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). However, when a postconviction petitioner asserts violation of constitutional safeguards we make our own evaluation based on the totality of the circumstances. This is the equivalent of de novo review. *Id.*

■ The State claims Bradham failed to exhaust all administrative remedies, prior to seeking judicial review, on several of the issues decided by the district court and therefore, those issues were not properly preserved for appeal to the district court. Iowa Code section 903A.3(2) requires prisoners to appeal to the warden and then the director of the Iowa department of corrections before seeking postconviction relief in district court. *See Aschan v. State*, 446 N.W.2d 791, 792 (Iowa 1989). Failure to do so deprives the court of jurisdiction of the case. *Id.* at 792. We will address the State's various "exhaustion" or preservation arguments in conjunction with our discussion of the specific issues.

■ IMPARTIAL HEARING. The State first contends Bradham failed to show good cause for not raising the issue of the impartiality of the disciplinary committee in his appeal to the Warden. Bradham asserts the committee members were not sufficiently impartial to evaluate a situation which involved almost exclusively his truthfulness versus the truthfulness of the Warden. Bradham contends the impartiality, or at least the likelihood or appearance of bias, with respect to the panel arises from the working relationship between the the committee members and the Warden.

We find Bradham has shown good cause for not raising this issue in his appeal to the Warden. The appeal would have essentially implied the Warden's influence caused the committee to not be impartial. Since the Warden brought the charge before the committee and essentially prosecuted the charge, such an appeal to the Warden would have been futile. Additionally, we do not find it significant that the Assistant Warden rather than the Warden decided Bradham's appeal. Bradham was required by law to appeal to the Warden and he had no knowledge the Warden would not hear the appeal.

■ The committee consisted of an independent administrative law judge (ALJ) who chaired the committee and ordered the disciplinary action, the security director of the prison, and a correctional officer at the prison. The State argues that because an independent ALJ held this primary role, Bradham was not prejudiced by the committee's composition under *Williams v. State*, 421 N.W.2d 890, 894 (Iowa 1988). The State urges that since only an independent ALJ may order forfeiture of an inmate's good conduct time, according to Iowa Code section 903A.3(1) (1989), only the ALJ's partiality is important. The State further asserts there is no requirement the decision-maker in prison disciplinary hearing be uninvolved with the institution.

In *Williams*, the supreme court discussed the composition of a prison disciplinary committee. *Williams* found that the presence of individuals in addition to an independent hearing officer such as an ALJ was unnecessary under Iowa Code section 903A.1. *Id.* at 895. Further, the *Williams* court stated "[w]hen the legislature reposed the decision-making duty on an independent hearing officer, we assume it withdrew that duty from all other persons." *Id.* at 894. *Williams* stated "[t]he independence required of the hearing officer is that the officer not be personally involved in the incident for which discipline is

sought or in prior disciplinary actions against the inmate." *Id.* at 895.

Although the *Williams* decision found the two members of the discipline committee, in addition to the ALJ, served in advisory capacities only and their votes in favor of disciplining the inmate were superfluous, the court also held that without a showing of prejudice, the additional committee members did not taint the result reached by an independent hearing officer. *Id.* In addition, *Williams* also determined there is no absolute constitutional requirement in prison disciplinary cases that the decision-maker be uninvolved with the prison. *Id.* (citations omitted).

Upon our review of the record, we find no reversible error resulting from the fact that the two additional committee members were directly or indirectly under the supervision of the Warden who brought the disciplinary action against Bradham. The ALJ in Bradham's case met the independence requirements set out in *Williams,* therefore the composition of the committee did not create reversible error in and of itself.

EX PARTE COMMUNICATION. The Warden did not appear at the disciplinary hearing. Prior to the hearing, the Warden talked to one of the committee members, Russell Behrends, about the case. The statements made by the Warden to Behrends were used as evidence at the hearing. Further, the Warden demonstrated to Behrends why the other witnesses, because of their positions in relation to the Warden and Bradham at the time of the incident, may have believed they saw the Warden place his hand into Bradham's pocket even though he did not do so. Bradham asserts this ex parte communication violated due process and violated his right to a hearing, since the evidence was presented prior to the time of the hearing.

■ The State contends Bradham failed to exhaust his administrative remedies by not arguing the issue of the Warden's ex parte communication with a committee member in his administrative appeals. The trial court found the good cause for not raising this issue during the administrative appeal was that Bradham was not aware of the communication during the time he sought relief via the administrative system. Bradham was not allowed to be present throughout the hearing, therefore, he would have had no way to know how the Warden's evidence was presented. We agree.

The trial court also found "[a]bsent other defects in the hearing procedure, the fact [the Warden's] statement was taken by one member may not have justified a new hearing." We do not agree.

■ In disciplinary hearings, prisoners do not possess an unlimited right to confront opposing witnesses. *Fichtner v. Iowa State Penitentiary,* 285 N.W.2d 751, 759 (Iowa 1979). "On the other hand, occupants of penal institutions, although prisoners, are persons, and they are not beyond the pale of the Constitution. Prison officials must not permit a disciplinary proceeding against such a person to be a mere gesture or a sham." *Id.* at 756. Additionally, in *Williams,* 421 N.W.2d at 894, the court stated "the issue of prejudice has always played a fundamental role in our postconviction jurisprudence."

■ The State argues the comments made by the Warden during the ex parte conversation were merely cumulative to other evidence. Therefore, the State argues, under the relaxed due process standards applicable to prison disciplinary proceedings, Bradham was not prejudiced by the ex parte conversation.

Although we found earlier in this opinion that the committee members in addition to the ALJ were superfluous with respect to the issue of the committee's impartiality, the fact one of those committee members served in an advisory capacity on the committee as well as essentially investigating the incident which was the action giving rise to the disciplinary hearing puts into issue the fundamental fairness of the hearing. Behrends went beyond his advisory capacity and by presenting the Warden's version of the facts to the committee, presented the majority of the facts which

were adverse to Bradham to the committee and the ALJ.

We find Behrends' dual functions of investigator and advisor impermissibly tainted the validity of the proceedings such that the decision must be vacated and a new hearing held on the matter in conformity with this opinion.

DENIAL OF WITNESSES. Bradham requested the presence of three witnesses during the hearing. Two of the witnesses' written statements were presented to the committee, but the committee determined the third witness had no relevant testimony. The third witness, Viers, had been present during the incident which occurred between the Warden and Bradham, but was no longer in the prison facility because he had been transferred to a work-release program in Des Moines. The individual who investigated the matter had the telephone number to contact Viers at the work-release program, but did not do so.

On appeal, Bradham contended he should have been allowed to have all three of his witnesses testify in person before the committee. The trial court found that the investigating officer failed to state in writing (the procedure set out in the Department of Corrections manual for not pursuing the statement of a named witness) why Viers was not called to testify. Further, the trial court found the failure to allow the other two witnesses to appear in person to demonstrate what they saw violated Bradham's right to call witnesses. The trial court appeared to feel that demonstrative evidence was highly important in this situation where the issue was what action actually did occur, and the Warden had stated that the other witnesses view was obstructed such that they did not know what actually did happen.

■ We do not agree with the trial court that Bradham's rights were violated by the fact his witnesses did not testify in person in front of the committee. We are not prepared to dictate the exact form of testimony a prisoner in a disciplinary hearing must be permitted to present. This type of decision must be made after considering the potential for undue hazards to the institutional safety and correctional goals. *See Fichtner*, 285 N.W.2d at 757 (authority omitted). We emphasize though, that the hearing should be conducted in such a manner as to maximally ensure the fundamental fairness of the proceeding as well as protecting the safety and goals of the institution.

■ We refuse to require the committee to hear live testimony from Viers, but the investigating officer should at least, contact Viers and if the officer then feels Viers' testimony will not add to the evidence, the officer should make a written statement giving the reasons for his or her decision. The ALJ then may determine whether Viers should be called to testify. In this respect, we modify the trial court's order.

CONCLUSION. We affirm the trial court's ruling ordering the decision and sanctions imposed by the Adjustment Committee vacated and remanding for a new hearing. We do not affirm the trial court's ruling that on remand, Bradham's case must be heard by individuals from outside of the reformatory staff. We modify the trial court's order requiring the Warden and Bradham's three witnesses to testify live in front of the committee, and instead leave these decisions to the committee's discretion. In light of our findings that Bradham showed cause for failing to raise various issues during his administrative appeals, other than his pro se status or lack of legal sophistication, we need not address the trial court's findings in these respects. *See Anderson v. Yearous*, 249 N.W.2d 855, 863 (Iowa 1977).

The costs of this appeal are taxed against the State.

AFFIRMED IN PART; MODIFIED IN PART AND REVERSED IN PART.